141 565
167 181

CHARLES W. RIGDON

*v.*

JOHN W. CONLEY.

*Filed at Ottawa May 12, 1892.*

1. CONTRACT—*signed by one party—when binding on both.* Where a contract, after its execution by one party, is accepted by the other, it becomes binding on both, though not executed by the other.

2. SAME — *construed according to its terms — immaterial elements.* Where the purchaser of property, in addition to a cash payment, is by the contract to place to the credit of the seller the balance of the price upon the books of a firm of which the buyer is a member, which credit is so entered, in an action by the seller against the buyer for the balance of the price it is wholly immaterial what amount of capital had been put into the firm by the parties composing the same, or how much money the buyer had in the firm at the time of the sale.

3. In such case, all the purchaser has to do to comply with his contract is to place to the credit of the vendor on the books of his firm the sum agreed upon. When this is done, whether he has much or little money with the firm will have no bearing on the question of his liability to the vendor.

4. Where A agrees to place to the credit of B a certain amount at a certain bank, it can make no difference to B how A obtains the credit, providing B receives a *bona fide* credit which is available in the usual course of business.

5. SAME—*understanding of parties—must be determined from the language used.* What the parties to a written contract may have understood as to the meaning of the language employed is not admissible in evidence. The intention or understanding of the parties, when there is a written contract in existence, must be determined, not from what the parties thought, but from the language of the contract itself.

6. PRACTICE—*order for the production of books.* A defendant asked for an order on the plaintiff to produce the books of the firm of which plaintiff was a member, to enable defendant to prepare for trial. On the hearing of the motion, defendant's counsel admitted that he only wished to examine the books of the firm to ascertain the amount of money belonging to plaintiff in the custody of the firm on a given day. The court denied the motion as made, but entered an order for the production of the books, broad enough to embrace all that the defendant desired to show, and the books were produced and examined by

an expert, and were brought into court on the trial: *Held*, that the defendant could not complain of the ruling of the court on his motion.

7. Cross-examination—*confined to matter brought out in chief.* As a general rule, the cross-examination of a party or witness should be confined to the matter brought out in chief. If the party cross-examining desires the evidence of the witness as to matters not called out on the direct examination, he should call such witness in his own behalf.

8. Where the plaintiff was called to prove that the defendant had admitted the correctness of his demand, the defendant, on cross-examination, undertook to prove by the plaintiff his set-off in defense, which the court refused to allow: *Held*, that the ruling was correct.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

Mr. Thomas J. Sutherland, for the appellant.

Mr. A. B. Jenks, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was an action brought by John W. Conley, against Charles W. Rigdon, to recover the sum of $1458.96, which was admitted to be due. The defendant, however, interposed a plea of set off, in which he claimed that the plaintiff owed him $7000, less $1458.96 sued for by the plaintiff.

The facts in regard to the claim of set-off may be briefly stated thus: On the 26th day of September, 1884, Rigdon sold to Conley a quarter interest in a valuable leasehold of certain lots, for the sum of $12,600 cash. Previous to the sale Rigdon had become indebted to Conley in the sum of $600 for borrowed money. As a part of the consideration this indebtedness was canceled and $5000 was paid to Rigdon in cash. The balance of $7000 it was agreed, as claimed by Rigdon, should be paid by Conley at once to the firm of Rumsey & Co., for and on account of Rigdon, Conley at the time being a member of the firm of Rumsey & Co. On the other

hand, Conley claims that the agreement was that he (Conley) was to place to the credit of Rigdon, on the books of the firm of Ramsey & Co., $7000, to be drawn by Rigdon in one year, "the said sum during said time accepted by the firm as cash margins in the purchase and sale of grain and provisions on the board of trade in Chicago, on orders from Rigdon."

On a trial of the cause in the Superior Court the plaintiff recovered a judgment for the amount of his demand, and on appeal the judgment was affirmed in the Appellate Court.

On the 1st day of July, 1889, the defendant entered a motion asking the court for an order requiring the plaintiff to produce the books of John W. Rumsey & Co. for examination, to enable the defendant to prepare for trial. The motion, as made, was denied, and the decision is relied upon as error. Upon looking into the record, however, it will be found that counsel for the defendant, on the hearing of the motion, "admitted that he only wished to examine the books of John W. Rumsey & Co. in order to determine the amount of money belonging to said Conley in· the custody and control of said Rumsey & Co. on September 26, 1884," and upon this admission the court entered an order, as follows:

"It is ordered that the plaintiff, John W. Conley, produce and deliver to the clerk of this court all the books of John W. Rumsey & Co. used by them in their business from the 1st day of September, 1884, to the last day of September, 1884; that then the defendant, his attorney or expert, shall, upon giving one day's notice to the attorney of said Conley, (or in case of his absence from Chicago, upon said Conley,) have the right, in the presence of said clerk, to examine the account of said Conley with the firm of John W. Rumsey & Co., and all entries and stubs of checks which show, or tend to show, the amount of money belonging to said Conley in the possession and control of said John W. Rumsey & Co."

As the order is broad enough to embrace all that the defendant desired, we perceive no ground upon which he can

predicate any objection to the decision of the court. Moreover, it further appears that the books were produced and examined by an expert, and they were also brought into court on the trial.

The plaintiff, on the trial, was sworn as a witness in his own behalf, and testified that the defendant admitted that he was liable for the sum of $1458.96, as shown by a statement in a paper which was produced, and that if he (the witness) would pay the amount he would repay him, with interest. The defendant then, on cross-examination, undertook to prove by the witness the defense of set-off which had been set up in his pleas, but the court held that the evidence was not admissible as a part of the cross-examination of the witness. We think the decision was correct. As a general rule, the cross-examination should be confined to the matter brought out in chief. If the defendant desired the evidence of the plaintiff, he had the right, at the proper time, to call him as a witness, and ask him any pertinent questions to establish his defense which he might think advisable,—and this course was pursued.

It is next claimed that the court erred in admitting in evidence an agreement bearing date September 25, 1884, purporting to be an agreement made between Rigdon and Conley, containing the terms of the sale of the leasehold interest. The agreement was executed by Rigdon but had not been signed by Conley, and this is the principal objection urged against its admission in evidence. Conley produced the paper on the trial, and testified that it was the agreement between him and Rigdon. After the agreement had been executed by Rigdon, if it was delivered to Conley and accepted by him as the contract between the two contracting parties, which seems to be the case, it may be regarded as binding on him, although he had not actually executed it.

It is also claimed that the court erred in sustaining objections to the following questions asked the plaintiff when on the stand as a witness:

Q. "Will you state how much capital was put into the firm by yourself and Rumsey when it was formed?" (Objected to, objection sustained, and exception by defendant.)

Q. "I will ask you, Mr. Conley, if you were familiar during the year 1884, and during the month of September, if you were familiar and knew what moneys the firm of Rumsey & Co. had in their possession subject to be appropriated in performance of this contract, or what they had in their possession?"

Q. "Mr. Conley, at the time this paper was signed and received by you, what did you understand, or what was stated, if anything, as between you and Rigdon, was the meaning of those words which have been read here,—words about placing credits upon the books of Rumsey & Co. for Rigdon's account?"

Q. "How much money had you at the time with the firm?"

It was entirely immaterial what amount of capital had been put into the firm of Rumsey & Co. by the parties composing the firm, and upon that ground the court properly ruled on the first question. If the agreement between plaintiff and defendant was, as shown by the contract, that Conley was to place to the credit of Rigdon, on the books of John W. Rumsey & Co., $7000, and Conley did place said sum to Rigdon's credit, as the evidence shows he did, we are unable to see how it was material to enter upon the inquiry as to the amount of available funds Rumsey & Co. had in their possession.

As to the third question, what the contracting parties may have understood as to the meaning of the language employed in the written contract, it was not admissible under any rule of evidence. The intention or understanding of the parties, where there is a written contract in existence, must be determined, not from what the parties thought, but from the language of the contract.

As to the last question, it was wholly immaterial what amount of money Conley had with the firm of Rumsey & Co.

All that he had to do to comply with the terms and conditions of his contract was, to place to the credit of Rigdon, on the books of the firm of Rumsey & Co., $7000. When that was done, whether he had much or little money with the firm, could have no bearing on the question at issue between the parties.

What has been said in regard to the ruling on questions propounded to Conley, applies to the ruling of the court on the questions asked the witness William Fries.

The last point relied upon to reverse the judgment is, that the court erred in refusing defendant's fifth instruction. In the instruction the court was requested, in substance, to inform the jury, that if Conley did not then or at any other time pay the said sum of money, or any part thereof, as so ordered, but instead thereof simply had a written credit of $7000 then put to Rigdon's account on the account books of Rumsey & Co., and had his, said Conley's, personal account on said books at the same time debited in writing the sum of $7000, and that in fact at the time such written credit and debit were so made said Conley had no money of his own in the possession of said firm unappropriated, or that therein could be placed at the disposal and to the use of said Rigdon, then and in such case this court instructs the jury that such written credit and debit did not amount to a compliance with the said Rigdon's orders, and was not a payment by said Conley of any money for and on behalf of Rigdon.

The theory of this instruction is, that the contract existing between the plaintiff and defendant required the plaintiff to pay in cash $7000 into the hands of Rumsey & Co. The written contract introduced in evidence will not admit of that construction. It provides for the payment of $5000 in cash to Rigdon. Then follows this provision: "For the balance of $7000 the party of the second part is to place to the credit of the said party of the first part, on the books of the firm of John W. Rumsey & Co., said sum of $7000, to be drawn

by the party of the first in one year from the date hereof."
Conley testified that Rumsey & Co. did place money to the
credit of Rigdon on the books of the firm. When asked how,
he answered, "By appropriating from the funds that I had
with them, to his use,—crediting the amount on his account,
$7000." This would seem to be a compliance with the con-
tract. In what manner or under what arrangement Conley
procured the firm of Rumsey & Co. to credit Rigdon with
$7000 does not seem to be material. If in good faith the
credit was given, so that Rigdon received the benefit from it,
he can not complain. If some fictitious arrangement had
been made between Conley and Rumsey & Co., whereby an
apparent credit was given Rigdon, but which was not availa-
ble to him, a different question might arise. But such was
not the case. The credit was given in the regular course of
business, and there is nothing in the record tending to show
that Rigdon failed to derive full benefit from the credit in his
dealings with Rumsey & Co. Where A agrees to place to the
credit of B a certain amount at a certain bank, it can make no
difference to B how A obtains the credit, providing he receives
a *bona fide* credit,—one which is available in the usual course
of business. A credit of the character mentioned may be
obtained by a deposit of money from a loan, by discounting
a note of a third party, or in some other manner. Here,
Conley caused a credit of $7000 to be given Rigdon on the
books of Rumsey & Co., and so long as he received the benefit
of the credit he has no right to complain in regard to the con-
tract made between Conley and Rumsey & Co., under which
Conley obtained such credit.

We think the instruction did not announce a correct prin-
ciple in its application to the facts of this case, and the court
did not err in refusing it.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*