BROATCH et al. v. BOYSEN et al.

(Circuit Court of Appeals, Eighth Circuit.  January 7, 1910.)

No. 3,016.

1. SPECIFIC PERFORMANCE (§ 32*)—VALIDITY OF CONTRACT—FORMAL REQUI-
   SITES—SIGNATURE.
       An agreement was entered into on behalf of certain persons, including
   complainants and defendant, which was reduced to writing, and signed by
   defendant alone.  It provided that he should secure coal leases on an
   Indian reservation with the approval of the United States government,
   and should assign the same to one of the other parties as trustee for the
   benefit of all the parties equally, and that each party should pay to the
   trustee a certain sum of money to be used in developing the lands under
   the supervision of a board of directors elected by the parties. · Held, that
   such contract contained mutual covenants, and was binding on all of the
   parties who accepted and assented to the same and at all times stood ready
   to fulfill their part, although it was not signed by them, and could by
   such parties be specifically enforced against defendant, who, on obtaining
   the leases, held the same in trust for the benefit of all as tenants in com-
   mon.
       [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 93;
   Dec. Dig. § 32.*
       Persons entitled to enforce specific performance of contracts.  See note
   to Lawyer v. Post, 47 C. C. A. 493.]

2. TRUSTS (§ 354*) — ENFORCEMENT — PROPERTY RECEIVED IN EXCHANGE FOR
   TRUST PROPERTY.
       Where property held in trust is exchanged for other property, equity
   will impress the trust upon the property so received in exchange.
       [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 527, 528; Dec.
   Dig. § 354.*]

3. EQUITY (§ 87*)—LACHES—LAPSE OF TIME.
       A suit in equity will not ordinarily be held barred by laches within the
   time allowed by statute for bringing a similar action at law, unless ex-
   traordinary circumstances are shown which would render it inequitable
   to apply such rule.
       [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 242–244; Dec.
   Dig. § 87.*]

4. SPECIFIC PERFORMANCE (§ 92*)—PERFORMANCE BY PLAINTIFF—DELAY CAUSED
   BY OTHER PARTY.
       Where a contract provided that defendant should secure coal leases on
   Indian lands, and on their approval by the Land Department should as-
   sign the leases to a trustee for the equal benefit of himself and complain-
   ants, and that within a certain time thereafter each party should con-
   tribute a stated sum to be used for developing the lands, complainants
   could not be charged with default which terminated their interest for
   failure to make such payments where defendant, although obtaining the
   leases, did not assign the same nor make any application to the Secretary
   of the Interior for permission to do so which was necessary under the
   conditions indorsed thereon with his original approval.
       [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 242;
   Dec. Dig. § 92.*]

       Van Devanter, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District
of Wyoming.

---

*For other cases see sa᷄ ᷄e topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in equity by William J. Broatch and others against Asmus Boysen and others. Decree for defendants, and complainants appeal. Reversed.

John F. Shafroth (James H. Adams and Gibson Clark, on the brief), for appellants.

John W. Lacey (Herbert V. Lacey, on the brief), for appellees.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. On April 1, 1899, at Ft. Washahie, Wyo., on the Shoshone Indian reservation, at a meeting at which were present Asmus Boysen, Adam Morell, Charles J. Woodhurst, John T. Wertz, and Joseph Weis, the written agreement hereinafter mentioned was signed by said Asmus Boysen. These parties had been in that neighborhood prior to that date for several days at least, prospecting with a view of obtaining leases of lands upon the Indian reservation for the development of minerals, principally coal. Woodhurst had done considerable surveying on the reservation for allotment purposes and had investigated the mineral character of considerable of the lands. To what extent any of the other parties had made an investigation of the lands does not clearly appear. It does appear, however, that Wertz and Weis in making their investigations and explorations were not only acting for themselves, but for other parties, including at least plaintiffs Jacob E. House, Robert C. Wertz, and John T. Clarke. After some negotiations, each of these parties communicated to the others the information he had respecting the mineral character of lands upon the reservation, and the agreement mentioned was then prepared and signed by Boysen; it being as follows:

"This agreement made and entered into this first day of April, 1899, by and between the following parties, to wit: Adam Morell, Joseph Weis, William J. Broatch, John T. Clarke, Harry T. Clarke, Jacob E. House, Robert C. Wertz, Rees E. Davies, Charles J. Woodhurst, Thomas Coughlan, Asmus Boysen, P. I. Barr and four unknown, for the purpose of leasing certain lands on the Wind River and Shoshone Indian reservation, in the state of Wyoming, of the said Indians and the United States government. Said leases covering coal lands and other minerals within said reservation, and the said leases are being taken for the purpose of prospecting for coal. In fulfillment of this project, each and every party above mentioned hereby agrees to pay into a certain trust fund the sum of two thousand dollars, to be paid as follows: Five hundred dollars within thirty days after the approval of the first lease now being taken up, and five hundred dollars ($500.00) in sixty days after the approval of said lease, and five hundred dollars ($500.00) one year after the approval of said lease, and five hundred dollars ($500.00) eighteen months after the approval of said lease, with the exception of six parties as follows: Joseph Weis, Robert C. Wertz, Jacob E. House, Charles J. Woodhurst, one of the unknown and Adam Morell, who shall receive for the consideration of one dollar ($1.00) and other valuable consideration, a receipt of same is hereby acknowledged, a receipt in full, or a certificate from the trustee giving each of them an equal share to this partnership, it is hereby agreed that if any of these parties above mentioned shall fail to make their payments, on the date specified, after having received due notice from the trustee of the date when payments become due, that their interest in this agreement and partnership ceases as though they had never been a party thereto and the trustee is hereby authorized to cancel such receipts or certificates as the party or parties in default would have been entitled to if payments had been fulfilled as stipulated and the

money paid by said party or parties is hereby forfeited as liquidated damages to the trustee, after thirty days' notice to place on market such receipts or certificates to be sold to the highest bidder thirty days after the cancellation of said receipt or certificates and to issue a receipt or certificate to the purchaser, who will receive equal partnerships in this agreement. All of the leases are to be taken up in the name of Asmus Boysen who agrees that after said leases are approved, to assign them to Adam Morell, trustee, who agrees that he will not sublet or assign any of these leases that may be taken on the Wind River and Shoshone Indian reservation in Wyoming, to any syndicate company or private individual or person without the written consent and approval of each party named in this agreement who are in good standing, and it is hereby agreed that the said Adam Morell shall act as trustee after furnishing a good and sufficient bond for $30,000, thirty thousand dollars, that he shall act as trustee, that he shall have full power to receive and receipt for all moneys and to settle all accounts of the partnership to this agreement, with the aid and assistance of a board of six directors, to be selected from the names of parties mentioned and named in this contract, after leases are approved, at a meeting called in Omaha by the trustee, Adam Morell, all notices of meetings must be sent two weeks in advance and said notices must be sent by registered mail and addressed properly, after board is elected, said board and the trustee will arrange for the management and pushing forward the development of said property at an early date. The said Adam Morell agrees to keep a full account of all expenditures and to furnish an itemized statement to be mailed to every party in good standing to this agreement every sixty (60) days, showing the receipts and the money expended. It is mutually agreed that under no circumstances must the liabilities exceed the sum subscribed by the parties to this agreement. This agreement will remain in force two years from date of the approval of the first lease, when at such time the trustee whose office will be in Omaha, Nebraska, will call a meeting of all members by notifying each party in manner as heretofore described, and ten of the parties in good standing will control further interest in the partnership. If at any time the trustee has a surplus of thirty thousand dollars ($30,000) cash on hand to meet expenses the said amount is to be equally divided between the parties in good standing to this contract, and checks issued to each of them in equal amounts. It is agreed that Joseph Weis can borrow $250.00 (two hundred and fifty dollars) for one year at seven per cent. (7%). It is further agreed that Jacob E. House shall at no time be expected to pay in any moneys, and he cannot be held responsible or liable for any debts incurred by the trustee or any company that may be formed later, and if a stock company shall be formed that all of Jacob E. House stock shall be preferred stock and nonassessable. In case of default or failure in the undertaking or venture and the bond furnished by Asmus Boysen to the Indians and the United States government shall be forfeited for reason now unknown, then each and every party hereto, who derived a share of the income shall be held individually responsible and do hereby agree to pay said bond, with the exception of one Jacob E. House."

Each of the parties took a signed copy, and a copy was given to John T. Wertz for Robert C. Wertz. Boysen, John T. Wertz, and Mr. Weis then went to Omaha, Neb., and met at the depot on their arrival the plaintiff Harry T. Clarke, who was there to take the train for Wyoming to obtain leases of lands on the reservation in the interest of himself and others. He was told by Boysen that it was "not necessary for him to make the trip. Everything had been arranged for, and I am going to procure that lease. You people are going to be provided for in that lease." The parties then went to a hotel, and that evening and the next day a discussion of the agreement was had between Boysen and some of the plaintiffs, and copies left with some of them. Thereafter Boysen procured a lease of some 178,000 acres of land on the reservation, the lease bearing date July 1, 1899, and ap-

proved by the Secretary of the Interior October 4, 1899. The lease provided among other things that it should extend over a period of 10 years from and after the date of the approval thereof by the Secretary of the Interior; that the mining privileges granted by the lease should extend to and include only coal, and that no rights or privileges respecting any other kind or character of mineral were granted or intended to be granted by the lease; that Boysen, his successors or assigns, should proceed to develop the mines and work the coal deposit therein forthwith and prosecute the same with diligence, and file with the Secretary of the Interior quarterly reports of all prospecting done and discoveries made; also quarterly reports of the gross out-put of all his mining operations under the lease; and that he should pay in lawful money of the United States, to the Secretary of the Interior, or such party or parties as the Secretary might designate, for the benefit of the Indians, a sum of money equal to 10 per centum of the market value of the coal mined at the place mined, such payments to be made every three months during the continuance of the lease for all coal mined or removed during the three months last preceding; that Boysen, his successors or assigns, would open and operate the mines and deposits of coal and cause the same to be worked and mined to the fullest practicable extent; that the lease was made subject to existing law or laws, and any law or laws thereafter enacted pertaining to the said reservation; that in the event of the extinguishment, with the consent of the Indians, of the Indian title to the lands covered by the lease, then the lease, and all rights thereunder, should terminate; that Boysen should file in the Department of the Interior his bond in the sum of $10,000, with sufficient sureties, to be approved by the Secretary of the Interior, conditioned for the faithful performance on his part, his successors or assigns, of all his duties and obligations under the lease; that the Secretary of the Interior was authorized and empowered to make such additions to the lease as in his judgment might not impair the rights and privileges in the matter of the Indians.

In the approval of said lease by the Secretary of the Interior was the following provision:

"It is further expressly agreed between the parties hereto that the party of the second part will not at any time during the term hereof grant, assign, lease, convey or transfer any of his estate or interests in or to any part of said premises or the appurtenances thereto, or the term hereof, to any person or persons whomsoever, without the consent of the Secretary of the Interior."

So far as disclosed by the evidence, nothing was thereafter done by any of the parties either under the agreement or the lease except that John T. Clarke and Mr. Woodhurst each on several occasions wrote Boysen respecting the matter, signifying a willingness and desire to have the matter progress according to the terms of the agreement. Morell did not give the bond called for, Boysen did not convey the lease to him as trustee, none of the parties were notified or ever asked to pay any money—in fact, nothing was done after the lease was procured.

175 F.—45

In March, 1905, Congress passed an act entitled:

"An act to ratify and amend an agreement with the Indians residing on the Shoshone or Wind River reservation, and to make appropriations for carrying the same into effect." Act March 3, 1905, c. 1452, 33 Stat. 1016.

In said act was a provision as follows:

"And provided that nothing herein contained shall impair the rights under the lease to Asmus Boysen, which has been approved by the Secretary of the Interior, but said lessee shall have for thirty days from the date of the approval of the surveys of said land a preferential right to locate following the government surveys not to exceed six hundred and forty (640) acres in the form of a square, of mineral or coal lands in said reservation; that the said Boysen, at the time of the entry of such lands shall pay cash therefor at the rate of ten (10) dollars per acre and surrender said lease and the same shall be cancelled."

In pursuance of said act, Boysen, located the following lands: The S. E. ¼ of section 32, and the W. ½ of the S. W. ¼, and the lots 1 and 2 of section 33, in township 6 N., and the lots 1, 2, 3, 4, and 7, of section 4, and the lots 1 and 2, and the N. ½ of the S. E. ¼ of section 5, in township 5 N., of range 6 E., of Wind River Meridian in Wyoming; and a patent was issued to him for the same by the United States May 17, 1907.

While the act mentioned was pending before Congress, John T. Clarke and John T. Wertz went to Washington and assisted Boysen in having the provision inserted in it giving to him the right to locate one section of land for the surrender of his lease. On the 9th of July, 1906, complainants filed their bill in this case, asking that it be adjudged that Boysen held said section of land in trust according to the terms of said agreement of April 1, 1899, and other relief. Issues were joined, evidence taken, trial had, and the bill dismissed at complainants' costs, the circuit court holding that the complainants were not entitled to an enforcement of the agreement for want of mutuality, for the reason that complainants had not performed any of the agreements or covenants on their part to be performed, or offered to do so, and that they were guilty of laches.

It is claimed on the part of the defendant that the agreement possessed no binding force as it was not signed by any of the parties thereto except Boysen. As Boysen in this action is the party sought to be held, the agreement being signed by him, we think sufficient if the other parties accepted the same and agreed to all its terms. McPherson v. Fargo, 10 S. D. 611, 74 N. W. 1057; Rigdon v. Conley, 141 Ill. 565, 30 N. E. 1060; Indianapolis Nat. Gas Co. v. Kibbey, 135 Ind. 357, 35 N. E. 392; Sellers v. Greer, 172 Ill. 549, 50 N. E. 246, 40 L. R. A. 589; Justice v. Lang, 42 N. Y. 493, 1 Am. Rep. 576. The covenants were mutual, and any party to the agreement, upon accepting the same became bound by its provisions. Boysen, upon obtaining the lease, held the properties therein described in trust for the respective parties named in the agreement who had accepted the same. Shea v. Nilima, 133 Fed. 209, 66 C. C. A. 263; Hendrichs v. Morgan, 167 Fed. 106, 92 C. C. A. 558; Moritz v. Leavelle, 77 Cal. 10, 18 Pac. 803, 11 Am. St. Rep. 229. The agreement gave to the respective parties thereto the rights of tenants in common as to the leasehold interest. In re-

spect to the working of the mine they were partners. Manville v. Parks, 7 Colo. 128–133, 2 Pac. 212; Duryea v. Burt, 28 Cal. 570–587.

The rule is fundamental that, if a trust attaches to certain property and such property is exchanged by the trustee for other property, equity will impress the trust upon the property thus acquired in exchange. So in this case, Boysen's holding of the lease being that of trustee for the benefit of those parties to the agreement who accepted its terms, a like trust attached to the land patented to him by the United States upon his surrender of the lease.

It is, however, said that complainants are guilty of such laches as prevents equitable relief. In London & San Francisco Bank v. Dexter, Horton & Co., 126 Fed. 593–601, 61 C. C. A. 515, 523, the Court of Appeals for the Ninth Circuit stated the rule as to laches as follows:

"No hard and fast rule has been laid down by the court which can be said to govern all cases wherein the defense of laches is invoked. The lapse of time which might induce the application of the doctrine is not a determined period, but depends upon the circumstances of the particular case. One principle pervades all cases involving the defense of laches, however, and that is that not only must there be a seemingly unnecessary delay on the part of the plaintiff in bringing or prosecuting his action, but that, by reason of some change in the condition or relations of the property or parties occurring during the period of delay, it would be inequitable to permit the claim of the plaintiff to be enforced."

In Kelley v. Boettcher, 85 Fed. 55–62, 29 C. C. A. 14, 21, this court said:

"In the application of the doctrine of laches, the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. Rugan v. Sabin, 10 U. S. App. 519, 534, 3 C. C. A. 578, 582, and 53 Fed. 415, 420; Billings v. Smelting Co., 10 U. S. App. 1, 62, 2 C. C. A. 252, 262, 263, and 51 Fed. 338, 349; Bogan v. Mortgage Co., 27 U. S. App. 346, 357, 11 C. C. A. 128, 135, and 63 Fed. 192, 199; Kinne v. Webb, 12 U. S. App. 137, 148, 4 C. C. A. 170, 177, and 54 Fed. 34, 40; Scheftel v. Hays, 19 U. S. App. 220, 226, 7 C. C. A. 308, 312, and 58 Fed. 457, 460; Wagner v. Baird, 7 How. 234, 258, 12 L. Ed. 681; Godden v. Kimmell, 99 U. S. 201, 210, 25 L. Ed. 431; Wood v. Carpenter, 101 U. S. 135, 139, 25 L. Ed. 807. The meaning of this rule is that under ordinary circumstances a suit in equity will not be stayed for laches before, and will be stayed after the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. * * * When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show either from the face of the bill or from his answer that extraordinary circumstances exist which require the application of the doctrine of laches, and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show by suitable averments in his bill that it would be inequitable to apply it to his case."

The same rule was subsequently announced by this court in Ide v. T. D. & R. Carpet Co., 115 Fed. 137, 53 C. C. A. 341; Boynton v. Haggart, 120 Fed. 819, 57 C. C. A. 301; Brown v. Arnold, 131 Fed. 723, 67 C. C. A. 125; Stevens v. Grand Central Min. Co., 133 Fed. 28, 67 C. C. A. 284; Williams v. Neely, 134 Fed. 1, 67 C. C. A. 171, 69 L. R. A. 232; Brun v. Mann, 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154.

The Wyoming statute of limitations authorizes the bringing of an action for the recovery of the title or possession of lands, tenements, or hereditaments at any time within 10 years after the cause of such action accrues. Rev. St. 1899, § 3451.

This action was commenced within the period of the Wyoming statute of limitations, and no circumstances are shown to authorize a court of equity to shorten such statutory time. As we have said, the evidence does not disclose that anything was done by any of the parties looking to the development of the properties, or that any moneys have been expended except the inference that Boysen paid the $10 per acre for the land patented to him under the subsequent act of Congress. By the terms of the agreement Boysen was to assign the leases obtained, upon their approval, to Adam Morell, trustee, and he, as trustee, was to give a good and sufficient bond in the sum of $30,000, and he was not to sublet or assign any lease or leases without written consent and approval of each party named in the agreement who should be in good standing. The parties to the agreement who were to make payments were to make the first payment of $500 within 30 days after the approval of the lease, other payments to be made at stated periods thereafter. It was provided in the agreement that if any party, after receiving notice from the trustee of the date when payments became due should fail to make such payments that his interest in the agreement should cease, the trustee was authorized to cancel his receipts or certificates, and, after giving 30 days' notice, to sell the receipt or certificate of such delinquent party to the highest bidder and to issue a receipt or certificate to the purchaser, who would receive such delinquent party's interest in the agreement. There is no showing that Morell ever qualified as trustee, or that Boysen ever offered to assign the lease to him or any of the parties. The lease ran to Boysen, his successors or assigns. In the approval of the lease by the Secretary of the Interior, it is provided that no assignment or transfer of any interest therein by Boysen shall be made without the approval of the Secretary of the Interior, and it was the duty, we think, of Boysen to have applied to the Secretary of the Interior for permission to assign the lease to Morell as trustee, pursuant to the agreement. No such application was made. Had Boysen applied to the Secretary of the Interior to approve such assignment and the Secretary refused, the case would have presented a condition which does not now confront us. We do not think that Boysen, after obtaining the lease, could remain quiet, make no application to the Secretary for permission to assign, give no information to Morell or any of the parties that he was ready and willing to assign, and yet say that the other parties to the agreement lost all interest in the same because of failure to make payments before the trustee qualified and the lease was assigned to him by Boysen. We have said, however, that this agreement was binding upon those parties only who accepted it and assented to its terms. Boysen, Morell, Woodhurst, and Weis were present at the time of its execution, and accepted the same, agreeing to its provisions. John T. Wertz was present and accepted the same for his brother Robert and father-in-law, Jacob E. House. The testimony clearly shows that it was accepted and its terms agreed to by John T. Clarke and William J. Broatch.

We are not concerned with the rights of Adam Morell. He, being a defendant, filed an answer disclaiming all interest in the agreement. Joseph Weis, though made a defendant to the bill, did not appear, and a decree pro confesso was taken against him. The evidence does not disclose an acceptance upon the part of Harry Clarke. True, he deferred going to Wyoming when he met the parties mentioned at the depot, and thereafter read and discussed the provisions of the agreement. There is nothing, however, in his action and conduct to indicate an acceptance on his part. On his examination as a witness he was asked the following question: "Mr. Clarke, have you been ready to comply with your part of this contract at all times"—to which he answered, "Yes, sir; I will qualify this—if I thought it worth while after investigation," thus showing that he never accepted the agreement and only intended to do so at a subsequent time, if, on investigation, he thought it worth while doing so. The enterprise was one in its nature speculative. Whether coal would be discovered upon the lands covered by the lease in quantities, and of a quality sufficient to justify the mining and marketing of the same, making the enterprise a profitable one, was problematical, and could only be determined by future investigation and expenditure of money. In a transaction of that nature a party will not be permitted to say, I will wait until such investigation and expenditure has been made and it has been ascertained that the contract is a desirable one, and, if desirable, I will accept its provisions; if not, refuse to do so and be relieved of any of the burdens.

The testimony of Davies, one of the parties, indicates that Mr. Wertz at one time asked him if he had any objection to his name being used in a company to acquire leases, etc., and he said to Wertz, "I guess not, so long as it wouldn't cost me anything." He further testified that he had no interest in this matter and never did have; that, when Mr. Clarke was ready to go to the reservation, he was ready to stand his share of the expenses of Mr. Clarke on the trip, and would have paid his share of that expense at that time had he (Mr. Clarke) gone. After being repeatedly pressed, however, and in answer to a leading question, he did finally answer that he was ready to carry out the terms of the agreement referred to. He had, however, theretofore assigned his interest to Robert Wertz for $1. Considering his testimony as a whole, it is very clear that he did not accept the terms of the agreement. The same is true with reference to Thomas Coughlan. The evidence does not show an acceptance on his part. Nor does the evidence show any act upon the part of P. I. Barr which indicates an acceptance upon his part.

For the reasons above stated, the decree below must be reversed and the case must be remanded to the Circuit Court, with directions to enter a decree that the bill as to all the complainants except John T. Clarke, William J. Broatch, Mary F. House, executrix and sole heir of Jacob E. House, deceased, Robert C. Wertz, and Charles J. Woodhurst, be dismissed; that an accounting be had of the amount expended by Boysen in acquiring the lease and the patented land and in the development thereof, and also of any amounts which he has received therefrom; that unless each of the complainants John T. Clarke and William J. Broatch pay to the defendant the Asmus Boysen Mining

Company, a corporation, to whom the lands have been conveyed since the institution of this suit, the sum of $2,000, and, in addition thereto, the amount which one-sixteenth of said expenditures shall exceed the sum of $2,000, within 60 days after the accounting shall be closed and finally approved by the court, then the bill be dismissed as to them; that, unless each of the complainants Robert C. Wertz and Charles J. Woodhurst pay to the defendant the Asmus Boysen Mining Company the amount which one-sixteenth of said expenditures exceeds the sum of $2,000, then the bill be dismissed as to each of them; and that, in case any of them make the payment within 60 days, then the Asmus Boysen Mining Company shall convey to each of said four complainants who make such payment one-sixteenth interest in the said real estate described in the patent, and that it convey to Mary F. House, executrix and sole heir of Jacob E. House, deceased, one-sixteenth interest in said real estate described in the patent without any payment being made on her part. The complainants will recover one-half their costs in this court.

VAN DEVANTER, Circuit Judge, dissents.