## HENRY *et al.* v. TRAVELERS' INS. CO.

*(Circuit Court, D. Colorado. February 23, 1891.)*

1. EQUITY—PLEADING—ORIGINAL BILL—AMENDMENT.
    Plaintiffs' bill alleged that defendant was about to sell certain stocks delivered to it as collateral security for money loaned to plaintiffs, and it prayed a full accounting, an injunction against the threatened sale, and that in case any sales were made before final hearing they might be declared void. After an account had been taken, plaintiffs filed a supplemental bill, alleging that a sale had been made, and praying damages. *Held* that, as plaintiffs knew all the facts connected with the sale before defendant answered, this new matter should have been brought in by amendment to the original bill.

2. SAME—SUPPLEMENTAL BILL—DEMURRER—LACHES.
    The proceeds of the sale were taken into consideration in the accounting had in the case, and at the hearing plaintiffs did not insist on any exceptions to the master's report. The supplemental bill was filed more than five years after plaintiffs had notice of the sale, and several months after final decree. *Held,* that the supplemental bill was filed too late, and should be dismissed on demurrer.

In Equity. On demurrer to supplemental bill. For former reports, see 33 Fed. Rep. 132; 34 Fed. Rep. 258; 35 Fed. Rep. 15; 42 Fed. Rep. 363.

The object of the original bill was to establish a contract, and for an accounting between the plaintiffs and the defendant on the basis of the alleged contract. The bill alleged, among other things, that the defendant held various notes, mortgages, bonds, and stocks as collateral security for money borrowed by the plaintiffs from the defendant, and that the defendant had given the plaintiffs notice (a copy of which was set out in the bill) that it would, on the 28th day of September, 1885, sell certain named stocks to pay certain specified debts, for the payment of which the stocks had been pledged; and, in addition to the prayer for a full accounting, the bill prayed for an injunction to restrain the sale of ·the stocks mentioned in the notice, and "that, if the defendant in the mean time, and before the final hearing of this cause, makes any sale or sales of any of the property pledged as security for said debts, or any thereof, that all of said sales be declared null and void, and for naught held." The bill was filed in Denver, Colo., the day the sale was made in Hartford, Conn., and no injunction was moved for or issued. The court found and decreed that the defendant had entered into a contract with the plaintiffs in substance and effect as alleged in the bill, and it was referred to a master, to take and state the accounts between the parties. 33 Fed. Rep. 132. Months were consumed in taking testimony as to the state of the accounts. The master made a voluminous report, covering all the dealings between the parties, and settling and adjusting the various accounts. If the plaintiffs filed any exceptions to the master's report, they were not insisted on at the hearing. The defendant filed numerous exceptions, some of which were sustained, and the accounts in some respects restated by the court, and a final decree rendered on the 15th of May, 1890. 42 Fed. Rep. 363. The plaintiffs had notice of the sale of the pledged stocks at the time the sale was made, and the testimony in the original cause disclosed the fact of sale, and everything connected therewith. The supplemental bill, among other things, alleges:

"That in the month of September, 1885, the defendant gave your orators notice that the defendant would sell at public auction at Hartford, Conn., a great part of the stocks pledged as collateral security to pay certain debts, and which have been above described, to-wit:

" 'HARTFORD, Sept. 11, 1885.

" 'To. T. C. Henry, Ellen C. Henry, H. J. Aldrich, Colorado Loan and Trust Company, Grand River Ditch Co., Uncompahgre Canal Co., Denver Circle Real Estate Co., Denver Circle Railroad Co., of Denver, Colorado; T. C. Henry & Co., T. C. Henry, and George W. Carpenter, of Abilene, Kansas; Henry Mercantile Co., Henry Town and Land Co., of Henry, Colorado; Fruita Town and Land Co., of Fruita, Colo.; Citizens' Ditch and Land Co., of Henry and Denver, Colorado:

" 'You will please take notice that the Travelers' Insurance Company hereby demands of the respective makers or indorsers, or of any other party interested in the payment, on or about 12 o'clock meridian, of Monday, September 28, 1885, of the following specified notes, to-wit:

| Date of Note. | | Maker. | | | | | Amount. |
|---|---|---|---|---|---|---|---|
| Mar. 25, 1884, | Signed, | T. C. Henry, | - | - | - | - | $25,000 |
| Mar. 10, 1884, | " | T. C. Henry, | - | - | - | | 30,000 |
| May 22, 1884, | " | T. C. Henry, | - | - | - | - | 50,000 |
| Oct.   7, 1884, | " | T. C. Henry, | - | - | - | | 1,500 |
| Dec.   8, 1884, | " | T. C. Henry, | - | - | - | - | 3,000 |
| May 18, 1884, | " | Colorado Loan & Trust Co., | | | - | | 5,000 |
| May 27, 1884, | " | Uncompahgre C'l Co., | | - | | - | 50,000 |
| June 23, 1884, | " | Colo. Loan & Trust Co., | | | - | | 25,000 |
| June 24, 1884, | " | " | " | " | - | - | 5,000 |
| July   1, 1884, | " | " | " | " | - | | 4,000 |
| July   1, 1884, | " | " | " | " | - | - | 5,000 |
| July   1, 1884, | " | " | " | " | - | - | 6,000 |

---With interest on each of said notes.  Unless the above said notes are paid within the time above mentioned, the Travelers' Insurance Company hereby gives you notice also that it will sell, on Monday, September 28, 1885, at 2 o'clock P. M., at the office of said company, in Hartford, Conn., at public auction, the following securities deposited with this company as collateral security for the payment of said notes, according to the terms of the respective pledges, to-wit:  11,845 shares Grand River Ditch Co.'s stock; ------ shares Fort Morgan Irrigation Co.'s stock; 3,401 shares Empire Land and Canal Co.'s stock; 900 shares Denver Circle Real Estate Co.'s stock; 500 shares Denver Circle Railroad Co.'s stock; 495 shares Henry Mercantile Co.'s stock, Henry, Colo.; 300 shares Henry Town and Land Co.'s stock, Henry, Colo.; 1,000 shares Fruita Town and Land Co.'s stock; 985 shares Citizens Ditch and Land Co.'s stock; 3,000 shares Uncompahgre Canal's stock.

[Signed]                        " 'J. G. BATTERSON, President.' "

This is the same notice exhibited with the original bill.  The supplemental bill then alleges that the stocks, with trifling exceptions, were sold in pursuance of this notice for much less than their real value; that the sale was brought about by the fraudulent and oppressive conduct (which is set out in detail) of the defendant, and was illegal and void; that the stocks were of the value of more than one million dollars; and that the damages occasioned—

" By reason of the illegal and fraudulent sales and conversions of said property by said defendant to its own use aggregate more than the sum of one million of dollars.  * * *  And because said property has been so disposed of, and illegally and fraudulently converted to the use of the said defendant, and a part thereof sold and delivered to third persons, so that it cannot be returned to your orators, and because your orators elect hereby to recover from said defendant the value of said property so illegally sold, disposed of, and converted by the said defendant, and the damages to your orators thereby, in lieu of the return of said property, as prayed for in said original bill, your orators therefore pray that the value of said property, and the damages occasioned by such illegal disposition, sale, and conversion thereof, and said failure to perform and contract, as aforesaid, be ascertained in this suit, and that your orators, Henry and the Trust Company, have judgment therefor, and that the defendant be decreed to pay unto your orators, Henry and the Trust Company, the value of said property, so found and ascertained, and the damages found and ascertained, together with costs of this suit."

*John P. Brockway, Thomas & Patterson,* and *Willard Teller,* for plaintiffs. *Wolcott & Vaile, Charles H. Toll,* and *D. V. Burns,* for defendant.

CALDWELL, J., (*after stating the facts as above.*)   This bill sounds in damages only.   It seeks to recover damages for the alleged illegal conversion of the stocks, and consequential damages resulting from the conversion.   Confessedly, a court of equity would have no jurisdiction of the case upon original bill; but it is urged that a supplemental bill is but a continuation of the original case, and that equity, having jurisdiction for some purposes, will retain it for all, although some of the matters, if taken separately, would be exclusively cognizable in a court of law.   Conceding this to be so, it does not meet the difficulty in the plaintiffs' case.   The matter upon which the supplemental bill is based was known to the plaintiffs within a few days after the original bill was filed, and before any answer had been filed thereto.   Indeed, the bill anticipated the sale of the stocks on the day they were advertised to be sold, viz., 28th September, 1885, and contained a prayer adapted to that state of case.   The old rule that nothing can be inserted in an original bill by way of amendment which has arisen subsequent to the commencement of the suit has been abolished in England, and, if not abolished, very much relaxed, in this country.   Mr. Daniell says:

"The rule which formerly existed, that a plaintiff ought not to introduce facts by amendment which have occurred since the filing of the original bill, has been abolished, and the facts and circumstances occurring after the institution of a suit may be introduced into the bill by amendment, if the cause is otherwise in a state in which an amendment may be made, and, if not, they may be added by supplemental statement." Daniell, Ch. Pr. pp. 406, 407.

But this case falls within one of the exceptions to that rule, viz., that a bill may be amended by adding new or supplemental matter any time before the defendant has put in his answer.   Story, Eq. Pl. § 885. The plaintiffs having alleged in their bill that the stocks would be sold on the day they filed their bill, and having knowledge of the sale within a few days after it was made, and before the defendant had answered, it was competent for them, under equity rule 28, to have amended the bill, by setting up the fact that the stocks had been sold in pursuance of the notice set out in the bill, and adding such prayer as they saw proper. It is doubtful whether any amendment was required to bring the matter into the account.   Mr. Barbour says:

"Under a general decree for an account, the accounts may be taken down to the time of the report, without filing a supplemental bill as to matters which have arisen since the filing of the original bill." 2 Barb. Ch. Pr. p. 63.

But no opinion is expressed as to the applicability of this rule to this case.   The plaintiffs, with full knowledge of the sale of the stocks, made no amendment, but rested on their original bill.   Where the end may be obtained by an amendment, a supplemental bill will not be allowed. 1 Hoff. Ch. Pr. 391; Mitf. Eq. Pl. 49.   The cause went to a master to state the accounts.   The proofs taken before the master showed the sale of stocks, and the proceeds of the sale were taken into consideration in stating the account.   The plaintiffs did not except to the master's report, or at least insisted on none at the hearing.   The cause was pending more than four years; and, more than five years after the plaintiffs had

notice of the sale of the stocks, and several months after a final decree in the cause, without the leave of the court, this supplemental bill was filed, claiming damages for the alleged illegal conversion of the stock, by the sale mentioned.

The bill comes too late. It is well settled that a supplemental bill brought for new matter must be filed as soon as practicable after the matter is discovered.

"To entitle a party to file such a bill, it is necessary that the new matters should be discovered after the decree, or at least after the time when it could have been introduced into the cause; because a party is not to be permitted to amend his case after the hearing, in respect of matter which was before in his power. It has been decided with a reference to a bill of this nature that the question always is, not what the complainant knew, but what, with reasonable diligence, he might have known; and the decisions with regard to bills of review upon facts newly discovered appear to have been upon new evidence, which, if produced in time, would have supported the original case, and are not applicable where the original cause would not have admitted the introduction of the evidence as not being put in issue originally. Where a party was aware of the fact in question, or, by reasonable diligence, could have acquired the information, before the decree, he should have filed a supplemental bill shortly after the discovery, or after gaining that information which could put him upon inquiry. He cannot, in such a case, resort to this bill after going to a decree." 1 Barb. Ch. Pr. pp. 363, 364.

Mr. Hoffman states the rule in this language:

"A party will not be permitted to file a supplemental bill when he has submitted or agreed to a decree, after full knowledge of the facts which he seeks to bring forward by the supplemental bill." 1 Hoff. Ch. Pr. p. 398.

And the rule is stated in the same terms by Judge Story. Story, Eq. Pl. §§ 338a, 423; Daniell, Ch. Pr. 1537, and note; 2 Barb. Ch. Pr. 60, 61. If a party proceeds to a decree after the discovery of the facts upon which the new claim is founded, he will not be permitted afterwards to file a supplemental bill founded on such facts. Daniell, Ch. Pr. 1523, note 2. It is a general rule of equity practice that leave must be obtained to file a supplemental bill, and equity rule 57 by implication requires it. Daniell, Ch. Pr. 1523, note 2; Id. 1537, note 2; 1 Hoff. Ch. Pr. 403. But the objection that the bill was filed without leave is not matter for demurrer, but only ground to dismiss, in the discretion of the court. The supplemental bill discloses on its face the fact that it was not filed in time, and the defect may be reached by demurrer. Treating the demurrer as a plea, the result would be the same on the facts disclosed by the record. The demurrer is sustained, and the bill dismissed.