## NASH v. INGALLS.

### (Circuit Court of Appeals, Sixth Circuit. May 8, 1900.)

### No. 690.

1. **LIMITATIONS—APPLICATION BY COURT OF EQUITY.**
   A court of equity, in a suit to charge the defendant, as trustee, with a sum which might have been recovered in an action at law, will apply the statute of limitations which would have governed the action at law.

2. **SAME—CONTRACTS BY RECEIVER.**
   The statute of limitations applies to a contract made by a receiver, the same as though it had been made in his individual capacity.

3. **SAME—PLEADING.**
   The defense of limitation, as well as of laches, may be taken by demurrer in equity, where the lapse of time requisite to bar the suit under the statute appears from the bill, and no circumstances are shown to excuse the delay.

4. **SAME—SUIT AGAINST RECEIVER.**
   A bill against the receiver of a railroad alleged that defendant sublet to complainant certain premises held by the railroad company under a lease, and that it was agreed that the price of certain railroad materials furnished the receiver by complainant should be applied in payment of his rent, as well as the rent that should become due to the owner of the property, but that defendant failed to apply the same to the rent due to the owner of the property, by reason of which the lease to the company was forfeited and complainant evicted. It was sought to charge the receiver, as trustee for the complainant, with the amounts so received which the defendant had failed to apply in accordance with his duty. The suit was not commenced until 18 years after the default had occurred and complainant had been evicted, during which time, however, some payments had been made to complainant by the defendant on account of his claim, but none within the last 9 years, while the statute of the state limited the time for bringing such actions, whether for legal or equitable relief, to 6 years. *Held*, that the suit was governed by the state statute, and was barred by limitations as well as by the complainant's laches.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

This is a suit originally brought in the superior court of Cincinnati, and thence removed, upon the petition of the defendant, into the circuit court of the United States for the Southern district of Ohio, in the Western division thereof. By the plaintiff's petition, filed under the Practice Code of the state, he sought to recover a sum of money alleged to be due to him from the defendant on account of certain transactions had between them and other persons connected with such transactions, during the years from 1866 to 1888. It is unnecessary here to detail the particulars of the matters then alleged, in view of the fact that, pursuant to leave granted by the United States circuit court, the pleadings were recast, and considerable variations were made in the statement of the case. Upon the removal the case was placed upon the

equity docket of the circuit court. The defendant demurred to the petition, and upon the hearing of the demurrer it was sustained; the court being of opinion that the case, as stated, was not of an equitable nature, but was cognizable only at law. Leave was granted to transfer the case to the law side of the court, or to amend by converting it into a bill in equity; stating any facts which the plaintiff might be able to show, bringing it within the equitable jurisdiction, as the plaintiff might elect. The plaintiff elected the latter course, by filing a bill in which he alleged that in 1867 the Indianapolis, Cincinnati & Lafayette Railroad Company was a corporation of Indiana, constituted by the consolidation of the Indianapolis & Cincinnati Railroad Company and the Lafayette & Indianapolis Railroad Company, and on the 1st day of June, 1869, issued $2,000,000 of its bonds, bearing interest, and executed its mortgage of all its property to Hoadly and Smith, as trustees, to secure the payment of the bonds; that on the 1st day of October, 1868, one Butler leased to the Cincinnati & Indiana Railroad Company certain described land on the corner of Carr and Smith streets, in Cincinnati, for 99 years, for a rental of $3,504, payable semiannually on the 1st days of April and October, respectively; that on December 23, 1871, the last-named company sublet the leased property to the plaintiff for the term of 20 years, at an annual rental of $3,700, payable quarterly; that the plaintiff, for the purpose of manufacturing car wheels and castings, erected buildings thereon at a cost of $25,000, being more than twice the value of the land; that at the time of the making of this sublease to the plaintiff the defendant, Ingalls, was receiver of the Indianapolis, Cincinnati & Lafayette Railroad Company; that he made the lease as the agent of the Cincinnati & Indiana Railroad Company, the lessee of Butler, the stock of which last-named company was owned by the former, and whose road was also operated in conjunction with the road of the former company; that, as an inducement of the plaintiff's taking the lease, Ingalls, receiver as aforesaid, promised to purchase of the plaintiff the car wheels and castings necessary for operating his road, and to apply the purchase money coming due therefor, "first, to the discharge of all rental obligations accruing upon said leases, and the remainder to be paid in money to said Nash, in case the purchases exceeded in amount the rental obligations upon said leaseholds, and, in case the purchases fell short of the leasehold obligations, the complainant was to pay the difference in money"; that from 1872 to April 1, 1876, there were mutual accounts between the plaintiff and Ingalls, as receiver, and that about the last-mentioned date the receiver, without the plaintiff's knowledge, defaulted in the payment of the rent due to Butler; that on the 1st day of August following, one John S. Kennedy instituted in the circuit court of the United States for the Southern district of Ohio a suit against the Indianapolis, Cincinnati & Lafayette Railroad Company, the Cincinnati & Indiana Railroad Company and Hoadly, trustee, to foreclose the mortgage above mentioned, and that in that suit Ingalls was appointed receiver of both said railroad companies; that he accepted the appointment; that that suit is still pending and undetermined; that during the years 1876 and 1877 the plaintiff sold and delivered to Ingalls, receiver, a large quantity of car wheels and castings, the moneys arising from which sales were to be applied in accordance with the contract above stated, and that there was more than enough to pay said leasehold indebtedness, but that Ingalls failed to pay to Butler the amount due to him on the lease to the Cincinnati & Indiana Railroad Company, and left it unpaid during those years; that in January, 1878, the representatives of Butler filed a petition in the foreclosure suit above mentioned, claiming that the rent due on the lease from him was in arrears, and for relief, and that such proceedings were had upon said petition that under the order of the court the leasehold interest and the buildings erected upon the land by the plaintiff were sold for about $10,000, which were applied in part to pay the rent due to Butler, but that no part of the $10,000 was ever paid to the plaintiff; that, by reason of the failure of Ingalls to pay the rent due to Butler out of the proceeds of the car wheels and castings, the plaintiff's leasehold and improvements were sacrificed at a grossly inadequate price, and that he claims to be subrogated to Butler's right to have the earnings of the railroad companies applied in payment of the rent due to him, as part of the running expenses of the road, and, further, that the sales by him to the receiver in

1876 and 1877 amounted to about $5,000, and that the sum due, therefore, was a privileged debt, payable from current earnings, as part of operating ex-- penses; that, by neglecting to pay over the proceeds of the sales of car wheels and castings in 1876 and 1877 to satisfy the rent to Butler, Ingalls committed a breach of trust, "and in equity became a trustee of the complainant for the amount of all moneys in his hands then belonging to the complainant"; that the said defendant has never accounted for the sales made in the years 1876 and 1877, but made a number of small payments, the last of which was in October, 1887, amounting in the aggregate to about $2,200. The bill further alleges :"that since October, 1887, and before the month of November, 1895, the complainant called repeatedly upon the said Ingalls, seeking a settlement of their accounts, and that the said defendant, by delays and evasions from time to time, excusing himself by press of business from going into a settle- ment, yet promising to do so, and to pay the remainder of said account which should be found due this complainant, delayed and deceived this com- plainant until the month of November, 1895, when the complainant demanded a settlement and the payment of the sum which should be found due him, and the said defendant then wholly refused to render an account to the complain- ant, or pay him the money claimed to be due, or any part thereof." The complainant prays for a discovery of the accounts as shown by the books of the defendant, "and that the receiver be adjudged a trustee of all the moneys arising from said sales of car wheels and castings, and the proceeds of the sale of said leasehold and improvements, and required to account for the same," and for general relief. To this bill the defendant, Ingalls, interposed a general demurrer, which, upon the hearing, was sustained (79 Fed. 510), upon the ground that the plaintiff had been guilty of inexcusable laches, whereupon the bill was dismissed. The plaintiff brings the case here upon appeal.

David Stuart Hounshell, for appellant.
Edward Colston, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and RICKS, District Judge.

SEVERENS, Circuit Judge, having stated the case as above, de- livered the opinion of the court.

The gravamen of the amended bill consists of the charge that the defendant committed a breach of trust in neglecting to apply the pro- ceeds of the sales of car wheels and castings made to him, as receiver, by the plaintiff, in 1876 and 1877, to the payment of the rent accruing on the leases mentioned in the preceding statement, and especially that he failed to pay from such proceeds the rent due to Butler on the lease of the latter to the railroad company, in consequence of which it is claimed the plaintiff lost the benefit of his own lease, and all the improvements he put upon the premises on the faith thereof. In the circuit court the bill was dismissed upon the ground of laches on the part of the plaintiff in seeking a remedy for the wrong complained of. It is not sought by the plaintiff, in his bill, to recover special damages from the receiver for the consequences of the loss of the bene- fits of his lease or the loss of his improvements; but the object is to obtain an accounting by the receiver for the money remaining in his hands by reason of the alleged breach of trust, and a decree requiring him to pay it to the plaintiff. The failure of the receiver to apply the funds in his hands to the payment of the rent due on the Butler lease occurred as early as 1877, or early in the following year, for the pro- ceedings taken by the representatives of Butler on account of nonpay- ment of the rent were commenced on January 26, 1878; and it is as-

serted by the bill "that by reason of the said defendant's failure, neglect, and omission to pay over the proceeds of said sales made to him in the said years of 1876 and 1877 to the holders of the leasehold obligations, in discharge of their debt, the said M. E. Ingalls was guilty of a breach of trust, and in equity became a trustee of the complainant for the amount of all moneys in his hands then belonging to the complainant." In the nature of things, the complainant could not have been ignorant of the proceedings on the filing of the Butler petition; for they affected his own possession, and he was ousted by them. Indeed, the bill alleges nothing to show that he was not, at the time of its occurrence, aware that the breach he complains of was being committed. The law requires that, in order to relieve himself from the consequence of delay in seeking a remedy for a wrong, the party should have given reasonable attention to his own affairs, and he is chargeable with knowledge of such facts as such reasonable attention would have afforded him. Foster v. Railroad Co., 146 U. S. 88, 13 Sup. Ct. 28, 36 L. Ed. 899.

The statute of limitations in Ohio creates a bar to a suit for a cause of action like this after the lapse of 6 years. This suit was commenced June 12, 1896,—18 years, at least, after the original cause of action accrued. But certain partial payments were made from time to time, the last of which was in the month of October, 1887, since which time there has been neither payment, nor written acknowledgment nor promise to pay, signed by the defendant, such as is required by the Ohio statute to keep the liability from being barred. In that state the distinction between legal and equitable forms of action is abolished, and the statute of limitations applies as well to liabilities which were formerly enforced by suits in equity as to those which were the subjects of actions at law. But the plaintiff seeks to excuse himself from the operation of the statute as follows: He says that the trust set up by the bill was an express trust, and the suit was brought within the proper time after its repudiation. As an abstract proposition, the doctrine is correctly stated, where no other facts are stated which create a cause of action at an earlier date. But here a distinct violation of the trust is alleged to have occurred as early as the beginning of 1878, and this is the ground of the suit. The injury occurred at that time, and the cause of action immediately arose. The plaintiff had then the right to complain and seek redress. The object of the trust having been already defeated, it was open to him to sue for and recover the funds remaining in the hands of the trustee. If an accounting was necessary, that could have been demanded in his suit. His right to maintain such suit was no more perfect when he commenced the present suit than it had been for nearly 20 years before that time. No fact material to his right of action had occurred in the interval, and it would have been entirely competent for him to have maintained an action in the similitude of an action at law for money had and received at any time before it had become barred by the statute. There are several old cases in the early English chancery reports, in which it was declared in general terms that trusts were not within the statute. But later on the proper distinction was recognized and acted upon, and the distinction is this: That where the right was one purely of

equitable nature, and remediable only in the court of chancery, the statute does not apply; but, where the right is one upon which an action at law would lie, equity follows the law, and applies the statute to suits brought in that forum. In Kane v. Bloodgood, 7 Johns. Ch. 90, Chancellor Kent gave this subject prolonged consideration, and the authorities were fully examined. The deduction which he made from all of them was in accordance with the principles above stated. In Badger v. Badger, 2 Wall. 87, 94, 17 L. Ed. 836, Mr. Justice Grier, in delivering the opinion of the court, summarizes the doctrine thus:

"Courts of equity, in cases of concurrent jurisdiction, consider themselves bound by the statutes of limitation which govern courts of law in like cases; and this rather in obedience to the statutes than by analogy."

And see 2 Story, Eq. Jur. § 1520; Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807.

The reasons for the application of the statute to the contract of a receiver are the same as those which apply to the contract of any other party. In Seagram v. Tuck, 18 Ch. Div. 296,—a case much relied upon by counsel for appellant,—the suit was brought, not on a contract made by the receiver, but upon his liability to account to the court for a part of the assets which he had collected; and it was held that the cause of action did not arise until the passing of his final accounts, wherein he failed to charge himself with the item in question. It is settled that the defense afforded by the statute, as well as the defense arising from laches merely, may be taken by demurrer, where the facts stated in the bill show that the time within which suit should be brought has elapsed, and no circumstance is shown to indicate any valid excuse for not having brought it within that time. Hovenden v. Lord Annesley, 2 Schoales & L. 607; Badger v. Badger, 2 Wall. 87, 95, 17 L. Ed. 836; Lansdale v. Smith, 106 U. S. 391, 1 Sup. Ct. 350, 27 L. Ed. 219; Richards v. Mackall, 124 U. S. 183, 8 Sup. Ct. 437, 31 L. Ed. 396. The only reason assigned by the plaintiff for his delay is that the defendant, when called upon for a settlement, put him off from time to time, "excusing himself by press of business from going into settlement, yet promising to do so, and to pay the remainder of said account which should be found due this complainant," whereby the plaintiff was "delayed and deceived." This was insufficient to affect the running of the statute. In Hume v. Beale's Ex'x, 17 Wall. 336, 21 L. Ed. 602, the plaintiff in that case, by way of excuse for delaying his suit, averred "that she called on Beale repeatedly to settle, and that he promised to do so, and that these promises induced her not to sue him." But the supreme court held that this was too vague and general to avoid the bar of the statute of limitations. That was a much stronger case for relieving the plaintiff than the present; for the defendant was a lawyer, and the cestuis que trustent were women. But a short answer is that the statute which we are bound to apply does not prolong the time for bringing suit on account of a mere verbal promise, however positive, and the plain implication from the language of the bill is that what passed was in conversation on a personal interview. The result is that the decree dismissing the bill was right, and it is accordingly affirmed.