## MITCHELL v. BIG SIX DEVELOPMENT CO.

(Circuit Court, D. Missouri, S. W. D. at Joplin. January 9, 1911.)

No. 19.

1. EQUITY (§ 295*)—PLEADING—SUPPLEMENTAL BILL.

If a supplemental bill be filed after decree, it must not only be germane to the purpose of the original bill, but must be in aid of the decree or to revise it, and it cannot then perform the office of an amended bill unless the matter of amendment was not known, or for some reason, not chargeable to the fault of the complainant, could not be brought to the attention of the court by way of amendment during the progress of the case and before decree.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 583; Dec. Dig. § 295.*]

2. EQUITY (§ 301*)—PLEADING—SUPPLEMENTAL BILL.

In determining whether a supplemental bill filed after decree is demurrable for laches, reference may be had to the record, including the answer in the original case.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 593; Dec. Dig. § 301.*]

3. EQUITY (§ 296*)—PLEADING—SUPPLEMENTAL BILL AFTER DECREE—LACHES.

Complainant brought suit in equity for cancellation of a mining lease, which he had declared forfeited, as a cloud on his title, and to enjoin the lessee from further operation or trespasses on the mining property. Between the time of the filing of the bill and the issuance of a preliminary injunction, defendant continued to operate the mine, and paid complainant the royalty stipulated in the lease on the ore mined, which complainant accepted. Subsequently final decree was entered granting complainant the relief prayed for. *Held*, that complainant could not maintain a supplemental bill, not filed until nearly five years after decree, to recover damages for the waste and trespass committed by defendant by operating the mine between the time of the declared forfeiture and the granting of the injunction, as the facts were fully known to him before decree, and might have been set up by way of amendment to the original bill.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 586; Dec. Dig. § 296.*]

4. EQUITY (§ 423*)—JURISDICTION TO GRANT INCIDENTAL RELIEF—AWARDING DAMAGES FOR TRESPASS IN INJUNCTION SUIT.

In a suit in equity brought by a lessor of mining property for a cancellation of the lease, and to enjoin waste or trespass by the lessee in continuing to operate the mine after a forfeiture of the lease had been declared, the court had jurisdiction to award damages for such waste or trespass whether committed before or after suit brought; complainant having the right in the latter case to bring in the matter by amendment to the bill.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 990; Dec. Dig. § 423.*]

In Equity. Suit by S. Duffield Mitchell against the Big Six Development Company. On demurrer to supplemental bill. Demurrer sustained.

See, also, 70 C. C. A. 569, 138 Fed. 279, 1 L. R. A. (N. S.) 332.

S. Duffield Mitchell, pro se.

Thomas Hackney and Spencer, Grayston & Spencer, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

VAN VALKENBURGH, District Judge. May 31, 1898, complainant leased to the defendant company certain mining properties in Jasper county, Mo., for a period of 10 years, for the purpose of mining for lead and zinc ores, including the sinking of shafts, the mining of said land in good faith, the keeping on hand of sufficient machinery so as to permit sufficient mining, proper operation, and an increase in the capacity thereof. As rent or royalty therefor defendant agreed to pay complainant 12 per cent. of the market value of all ores mined and sold during its tenancy. July 11, 1903, complainant filed in this court his bill in equity, charging: That the defendant corporation had not performed the acts and duties required by it, but, on the contrary, had failed and refused to keep the drifts in said land drained of water to permit efficient mining thereof, and had failed to mine said ground in a workmanlike manner, and had removed, or caused to be removed, a pillar or pillars in said ground, which in mining said ground had been left to support the surface, and had failed properly to timber and secure the drifts of said ground from caving, by reason of which, and other failures, the ground had subsided, caved, and fallen in, to the great detriment and damage of said land. That by reason of its failure to comply with the requirements and conditions of the lease the defendant had forfeited the same, and the lease by its terms had ended and determined. That the complainant electing to enforce said forfeiture, as against defendant, had on the 7th day of July, 1903, declared said lease forfeited, had made re-entry on the land described, and declared an ouster of the defendant therefrom. That, notwithstanding the re-entry by complainant, the defendant refused to surrender the lease, and continued to claim and assert rights thereunder, and threatened to continue to do so, and to cause said land to be mined, and to take the ores, rock, and earth therefrom, to the irreparable damage of the complainant. That the defendant was insolvent, and his remedy at law inadequate, and that he would be subjected to great damage and injury to property and loss of money during the period of time from the date of forfeiture to the date of final judgment, wherefore the complainant prayed that this court might decree: First. "That defendant has no estate, interest, or title in or to the lease, or in or to the land covered thereby and described therein." Second. "That the title of complainant to said described land is unaffected by said lease, or any claim whatsoever of the defendant." Third. "That the lease is no longer in force and effect in favor of the defendant, and that the same may be canceled, annulled, and surrendered into the possession and keeping of the plaintiff." Fourth. "That the defendant corporation, its attorneys, officers, servants, and agents, pending this bill be specially and on final hearing that it be perpetually restrained and enjoined from asserting any claim whatsoever under said lease, and from remaining or continuing in possession of the land described therein." Fifth. "That the plaintiff may have such other and further relief as the equity of this case may require." There was no prayer for an accounting nor for the ascertainment or allowance of any special damages for the waste alleged to have been committed or threatened.

The defendant demurred to the bill, and October 6, 1903, the demurrer was overruled and a temporary restraining order and injunction were granted restraining and enjoining the defendant, its officers, agents, and servants, pending the bill, from the operation of the mines in question. The defendant answered, and the case proceeded to final proofs and argument, with the result that April 13, 1904, a decree was rendered finding the issues for the complainant, annulling the lease and setting aside the same as a cloud upon the complainant's title, and the injunction theretofore granted was made perpetual. On May 3, 1904, an appeal was allowed and perfected, and on April 22, 1905, the decree was affirmed by the Circuit Court of Appeals for this Circuit. The case is found reported under the same title in 138 Fed. 279, 70 C. C. A. 569, 1 L. R. A. (N. S.) 332.

During the period between July 11, 1903, when the bill was filed, and October 6, 1903, when the restraining order was issued, the defendant continued to operate the mines and took therefrom ores which sold for the gross sum of $24,644.51, upon which sum it paid to the complainant $2,954.70, being the 12 per cent. which the provisions of the lease required it to pay to the complainant as rent or royalty, and the complainant accepted the payments thus made. This situation was set up with particularity in defendant's answer filed October 16, 1903, and was urged as a waiver of the forfeiture, which, however, was not allowed either below or in the appellate court. At a January Term, 1910, of this court, nearly five years later, complainant asked leave to file his supplemental bill in said cause, reciting the former bill and the proceedings thereunder, and announcing his purpose to ask an accounting for damages and waste accruing from July 11, 1903, to October 7, 1903, by reason of the extraction of ores by defendant during that period in the amount as above set forth, on the theory that such relief flowed from and was in aid of the decree rendered in favor of complainant under the original bill. This application was opposed by the defendant on the following grounds:

"(1) The relief sought by the proposed supplemental bill is not germane to the original bill; not supplemental thereto, and designed to cure some oversight, cover some change in situation, or round out and complete the remedy sought and granted by the original proceeding.

"(2) Before issue joined, the complainant had full and complete knowledge of the facts on which he now seeks to base his supplemental bill. He took no action until more than five years after the decree of this court, and nearly five years after affirmance of that decree in the Court of Appeals. His laches precludes him from obtaining the right to file a supplemental bill.

"(3) Complainant's petition for leave to file supplemental bill shows on its face a perfect defense to such bill."

The learned judge who then presided over this court permitted the supplemental bill to be filed, but in so doing recognized the gravity of the objection made, and did not foreclose himself nor this court from their subsequent consideration. This is evidenced by his memorandum filed with the order. He said:

"It is an established rule of equity procedure that the granting of leave to file a supplemental bill is discretionary with the court. This discretion ought not to be arbitrarily or inconsiderately exercised against the applicant, for the reason that, if the leave be denied, the applicant is cut off from the

opportunity of vindicating the sufficiency of the pleadings and his right in the premises before the appellate courts. And therefore, as the granting of the leave to file the supplemental bill does not operate as any great hardship to the defendant, for the reason that if the bill is insufficient, and the party is not entitled thereto, no decree or leave could be had thereon; and for that reason the court will not in the first instance enter into any technical nicety on the question of the sufficiency of the pleading, but will leave such matter to a later determination. * * * For this reason, the court has concluded to grant the leave, as of the date when the application was presented, leaving the matter of objection thereto interposed by defendant's counsel to be raised by demurrer, or other plea which may seem then to be proper."

Conformably to the mode of procedure indicated by the court at that time, the defendant seasonably renewed its objections in the form of demurrer to the supplemental bill. I shall take up these objections somewhat out of the order in which they are urged by counsel for defendant.

First. Does the supplemental bill in this case disclose a perfect defense to such bill? The bill as filed contains this averment:

"That after said July 11, 1903, the date when the complainant filed his bill in equity in this honorable court and until October 7, 1903, the date when the temporary restraining order aforesaid was granted by this honorable court, the defendant corporation, notwithstanding the filing of said bill and the charges and the prayers for relief therein, continued to mine upon or to permit and require its sublessees to mine thereon and to produce and extract from said land large tonnage and quantities of lead and zinc ores, which your petitioner believes and is informed was sold for the value of $24,644.51, upon which said sum the defendant paid to your orator 12 per cent. thereof, to wit, the sum of $2,954.70 as rent or royalty, which the provisions of the said lease required it to pay to your orator."

Of this allegation counsel for defendant say:

"This payment of the contract rental while not waiving the complainant's right to maintain his action for a continuing cause of forfeiture was an accord and satisfaction and adjustment of all complainant's claim for mesne profits, use, and occupancy of the property for that period."

In support of this contention counsel cite Cleve v. Mazzoni, 45 S. W. 88, 19 Ky. Law Rep. 2001. That was a case where the tenant of a building held over after forfeiture was declared, which forfeiture was subsequently sustained on appeal. Meantime the plaintiff had accepted the regular rental pending the litigation. Afterwards he sought to recover damages for the unlawful detention. The court said:

"For all time the tenant is in possession he would be liable for use and occupation; and, if the landlord is willing to receive and the tenant to pay the contract rental, this would be but an adjustment of the liability for use and occupation."

It seems to me that the case at bar is readily distinguishable from that case, in that there the property detained after forfeiture was a rental building, and the only damages that could be laid would be a reasonable rental for its use and occupancy which might fairly be assumed to have been fixed and accepted by the parties in the rental contract and evidenced by the payments made thereunder. Here the damages sought to be recovered are the value of the ores removed to the injury and depreciation of the freehold, damages sounding in

waste or trespass. Furthermore, it cannot be said as a legal conclusion that the acceptance of this royalty, which, as we have seen, did not waive the forfeiture, was an accord and satisfaction as the result of an agreement between the parties consummated by a meeting of their minds in the settlement or adjustment of the claim under consideration. It has been held:

"A tenant is liable, in the absence of an express agreement to the contrary, for causing a permanent injury to the demised premises over and above the ordinary wear and tear, when such injury is caused by his wrongful act or negligence. * * * The right to sue for injuries committed by the tenant or those for whose acts he is liable is not waived by the subsequent acceptance of rent." 24 Cyc. 932, 933. And see Chalmers v. Smith, 152 Mass. 561, 26 N. E. 95, 11 L. R. A. 769.

It is true that the acceptance of this royalty without protest, the apparent satisfaction of the complainant therewith, to be inferred from the length of time that he has permitted to elapse before making claim for additional remuneration, lends color and substance to defendant's contention, but, owing to the essential differences respecting the uses of the property involved in the two cases, and to the further fact that the damages claimed are not for mesne profits or use and occupation, as was the case in Cleve v. Mazzoni, I prefer not to rest my conclusions here upon the reasoning of that case.

Second. Is the bill properly supplemental, and is the relief sought germane to the original bill? "A supplemental bill, as its name imports, is a new bill supplemental to the original bill and filed in the same suit in aid of the original bill." 2 Street, Fed. Eq. Prac. § 1155, p. 701. "Originally, the supplemental bill was chiefly used for two purposes: (1) To bring before the court matter in existence at the time of the filing of the original bill, but not alleged therein, because either not then known to the plaintiff or deemed impertinent; (2) to bring before the court new facts occurring subsequent to the filing of the bill. But, as indicated above, the first of these two functions of the supplemental bill is no longer exercised, the same end being now attained, for the most part, by amendments. It follows, under the present practice of our courts, the chief function of the supplemental bill is to bring forward new facts or events and to cure defects in the suit resulting from the occurrence of these events during the progress of the suit." 2 Street, Fed. Eq. Prac. § 1159, p. 703. "The supplemental bill, as regards the case-made and the relief sought in it, must have a legitimate and natural connection with the case-made and the relief sought in the original bill. The subject-matter of the supplemental bill must be, in a word, germane to that of the original bill. The new relief properly obtainable by a supplemental bill usually consists of a modification or enlargement of the relief originally sought." 2 Street, Fed. Eq. Prac. § 1168, p. 709. "A supplemental bill is a mere addition to or continuation of the original bill, constituting therewith a single record, and both must be read together. Hence there must be such a connection between the matter of the original and of the supplemental bill that a single bill combining the matter of both would not be multifarious. It follows, further, that the supplemental bill must not be repugnant to the original." 16 Cyc. 361. It will be observed

that most of the functions referred to in these quotations from the text-writers are in the nature of amendments to the original bill, and for such purposes the distinctions formerly existing between amended and supplemental bills have been largely broken down in actual practice by the courts. Of course, amended bills can only be filed during the progress of the litigation before decree and generally before answer, except with leave, while supplemental bills, in proper cases, may be filed after decree. Supplemental bills, so called, however, are frequently filed before decree for the purpose of amending the original bill. Sheffield & B. Coal, Iron & Ry. Co. v. Newman, 77 Fed. 787, 23 C. C. A. 459; New York Security & Trust Co. v. Lincoln St. Ry. Co. et al. (C. C.) 74 Fed. 67. An additional function of the bill is by way of aider to the original bill, as in Mellor v. Smither, 114 Fed. 116, 52 C. C. A. 64, and Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123. And, of course, it may be used as in the nature of a bill of review. And, as has been said in Root v. Woolworth, supra:

"A supplemental bill may also be filed, as well after as before a decree; and the bill, if after a decree, may be either in aid of the decree, that it may be carried fully into execution, or that proper directions may be given upon some matter omitted in the original bill, or not put in issue by it, or by the defense made to it. * * * But, where a supplemental bill is brought in aid of a decree, it is merely to carry out and to give fuller effect to that decree, and not to obtain relief of a different kind on a different principle; the latter being the province of a supplementary bill in the nature of a bill of review, which cannot be filed without the leave of the court."

[1] It is deducible from the foregoing as well as from the uniform decisions of the courts in federal jurisdictions that, if a supplemental bill be filed after decree, it must be in aid of that decree or to revise it. It cannot then perform the office of an amended bill, unless the matter of amendment was not known, or for some reason not chargeable to the fault of the complainant, could not be brought to the attention of the court by way of amendment during the progress of the case and before decree, and, of course, the relief sought must be germane to the purposes of the original bill. Can it be said that the relief sought in this supplemental bill is not germane to that prayed in the original bill, and could not have been urged upon the court by timely amendment? If this question in both branches be answered in the negative and complainant knew of the circumstances entitling him to this relief in time to have presented his claims to the court in the original case, then this bill is neither timely nor properly supplemental for the purposes for which it is employed. It does not seek to impeach the original decree, but asks other and further relief growing out of the very circumstances upon which the original prayer was founded, and this brings us to a consideration of the third and last objection urged by the demurrer. This objection is made in the following language:

"Before issue joined the complainant had full and complete knowledge of the facts on which he now seeks to base his supplemental bill. He took no action until more than five years after the decree of this court, and nearly five years after affirmance of that decree in the Court of Appeals. His laches precludes him from obtaining the right to file a supplemental bill."

The effect of lapse of time upon the right to file a bill of this nature has been exhaustively discussed by our Court of Appeals in Kelley et al. v. Boettcher et al., 85 Fed. 55, 29 C. C. A. 14, Wilson v. Plutus Mining Co. et al., 174 Fed. 317, 98 C. C. A. 189, Broatch et al. v. Boysen et al., 175 Fed. 702, 99 C. C. A. 278, and the rule clearly defined. It is there stated:

"Courts of equity are not bound by, and act in analogy to, the statutes of limitation relating to actions at law of like character. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches within that time. When a suit is brought after the statutory time, the burden is on the complainant to show in his bill and by his proof that it would be inequitable to apply it to his case."

And, where the laches is not disclosed on the face of the bill, it must be set up in the answer, and demurrer will not lie. "It is settled that the defense afforded by the statute, as well as the defense arising from laches merely, may be taken by demurrer, where the facts stated in the bill show that the time within which suit should be brought has elapsed, and no circumstance is shown to indicate any valid excuse for not having brought it within that time." Nash v. Ingalls, 101 Fed. 645–649, 41 C. C. A. 545.

[2] And, generally speaking, in determining whether the supplemental bill is demurrable for laches, reference may also be had to the record, including the answer in the original case, and this is true because in the very nature of things the supplemental bill must be read in connection with the original bill, constituting therewith a single record. The very right to file such a bill depends largely upon the situation of the parties and of the subject-matter in the original proceeding. Equity Rule 58; Mosgrove v. Kountze (C. C.) 14 Fed. 317. Of course, where reliance is placed upon circumstances such as those recited in Kelley v. Boettcher, supra, to induce a court of equity to apply the doctrine of laches in a shorter time than that fixed by the statute, to wit, the death or removal of parties and radical changes in the condition and value of the property, impossibilities in the production of proofs, and the like, which have arisen during the period of inaction, such circumstances, if not appearing upon the face of the bill, must be raised by answer. It will be conceded that the appeal to the Circuit Court of Appeals suspended all rights that had not accrued prior to decree.

[3] If complainant's right of action presented by the supplemental bill had accrued prior to decree and might have been asserted and considered in the original litigation, then his claim is barred by the analogous statute of limitations, unless he has shown in his bill that it would be inequitable to apply the doctrine of laches in his case. If, on the other hand, the rights here urged did not accrue until after decree, then from the standpoint of time alone the action is not barred, and it devolves upon the defendant to show, either from the face of the bill or by answer, that extraordinary circumstances exist which require the application of that doctrine. A familiar form of laches, more strictly equitable in its nature and not analogous to that arising under stat-

utes of limitation, is presented where new matter is not brought to the attention of the court within such time as is required under the situations peculiar to the specific case. "But in whatever form a supplemental bill is brought forward, if it is for newly discovered matter, it ought to be filed as soon as practicable after the matter is discovered; for, as we shall presently see, if the party proceeds to a decree after a discovery of the facts upon which his new claim is founded, he will not be permitted afterwards to file a supplemental bill, in the nature of a bill of review, founded on such facts." Story's Eq. Pl. § 338, p. 396. "It seems to me to be a general rule that a supplemental bill for newly discovered matter should be filed as soon after the new matter is discovered as it reasonably may be. If, therefore, the party proceeds to a decree after the discovery of the facts upon which the new claim is founded, he will not be permitted afterwards to file a supplemental bill in the nature of a bill of review, founded on those facts; for it was his own laches not to have brought them forward at an earlier stage of the cause." Story's Eq. Pl. § 423, p. 480. "Application for leave to file a supplemental bill based on facts that occurred and were known to the plaintiff soon after the filing of the bill comes too late after the cause has been heard and determined on a lengthy reference to the master. Before the requisite leave will be granted to file a supplemental bill attacking a decree on the ground of newly discovered facts, it must appear that those facts could not have been discovered in the exercise of reasonable diligence in time to have been set up in the original bill or in an amended bill." Street, Fed. Prac. § 1184, p. 722. "Leave will not be given after decree to file a supplemental bill to set up matters which might with reasonable diligence have been ascertained and determined in the original decree, nor will it be permitted to vary the relief or principles established by the decree." 16 Cyc. 360, and cases cited. This supplemental bill does not seek to impeach the decree in the sense of setting aside the relief there granted, nor is it in aid of that decree in the sense of seeking to give effect to the relief there granted, because all the relief there prayed was granted and became immediately effective. What complainant does seek by this bill is to enlarge the relief formerly sought, to obtain relief of a different kind and on a different principle. The decisions in this circuit and elsewhere are agreed that this cannot be done in situations like the present one.

In Mosgrove v. Kountze (C. C.) 14 Fed. 315, the original bill sought to subject certain real estate in the bill described to the payment of a judgment previously recovered against the Omaha & Northwestern Railroad Company. It was in the original bill averred that the respondents had received certain bonds amounting to $112,000, which they had converted to their own use, but it was not sought by the original bill then to subject the real estate to the payment of the judgment. A decree was rendered granting to complainants all that was asked in their bill. Thereafter they asked leave to file a supplemental bill for the purpose of subjecting this personal property also to the payment of the balance alleged to be due upon the judgment. It was objected that the facts set forth in the supplemental bill might have

been ascertained and pleaded by way of amendment to the original bill. McCrary, Circuit Judge, sustained the objection, saying:

"It is well settled that leave will not be granted, after decree, to file a supplemental bill for the purpose of setting up matters which might by the use of due diligence have been ascertained and pleaded by way of amendment in the original suit. * * * Even if we do not look beyond the allegations of the original bill, we have ample proof that the facts sought to be set by way of supplemental bill was, or might have been, known to the complainants at the time the original suit was commenced. But as already stated, it is sufficient if it appears that the facts sought to be set up by way of supplemental bill were known in time to have been presented by way of amendment to the original bill. It is not enough that they were not known when the original bill was filed. * * * It appears, therefore, that the complainant chose to proceed against the real estate alone, doubtless upon the expectation that it would be entirely sufficient to satisfy his judgment. If in this he was mistaken, it does not by any means follow that he can at this late day file a supplemental bill in the same case for the purpose of reaching other and different property."

To the same effect is Henry et al. v. Travelers' Ins. Co. (C. C.) 45 Fed. 299. Caldwell, Circuit Judge, said:

"Where the end may be obtained by an amendment, a supplemental bill will not be allowed. * * * It is well settled that a supplemental bill brought for new matter must be filed as soon as practicable after the matter is discovered"—citing Hoff. Ch. Pr. p. 398, wherein it is said: "A party will not be permitted to file a supplemental bill when he has submitted or agreed to a decree, after full knowledge of the facts which he seeks to bring forward by the supplemental bill."

In City of Omaha v. Redick, 63 Fed. 1, 11 C. C. A. 1, our Circuit Court of Appeals, speaking through Judge Thayer, said:

"A supplemental bill in the nature of a bill of review to obtain a modification of a decree on account of newly discovered facts cannot be entertained when it appears that the new facts or circumstances were well known to the complainant prior to the entry of the original decree. * * * It remains to be considered whether, upon the authorities, a supplemental bill in the nature of a bill of review to obtain a modification of a decree can be properly entertained, which discloses no facts pertinent to the litigation and to the issues involved therein, except such as were well known to the complainant prior to the first decree. A leading case on that point is Pendleton v. Fay, 3 Paige [N. Y.] 204, where it was held that a supplemental bill ought to be filed as soon as the new matter sought to be inserted therein is discovered, and that, if a party proceeds to a decree after the discovery of the facts upon which the new right or claim is founded, he will not be permitted afterwards to file a supplemental bill, in the nature of a bill of review, founded on such facts."

Where a court of equity takes jurisdiction in a case like the present one, it draws to itself cognizance of the entire controversy. Having obtained jurisdiction upon sound equitable grounds for the purpose of preventing a multiplicity of suits, it will retain it for further relief and will do full justice between the parties; and that, though the party may also be entitled to an action at law. In the Elevator Case (C. C.) 17 Fed. 200–204, Mr. Justice Miller said:

"When either party, lessor or lessee, claims that acts have been done which render the continuing of the relation no longer proper, such party can go into a court of equity on general principles, and ask to have that lease set aside, canceled and annulled. In that case the court of equity sits holding the scales of justice evenly between the parties, and may say that it believes

that such acts have been done by the lessee, for instance, as ought to terminate the agreement, or that he shall account by compensation and by payment of damages. And the court will declare the agreement at an end, and set aside, and annulled, and will make such orders as seem proper and right."

In Preteca et al. v. Maxwell Land Grant Co., 50 Fed. 674, 1 C. C. A. 607, the Court of Appeals for this Circuit said:

"From the averment of the bill it is obvious the complainant resorted to equity to avoid a multiplicity of suits and irreparable damage resulting from continued acts of waste and trespass to land. These are recognized heads of equity jurisdiction. A court of equity may take cognizance of a controversy to prevent a multiplicity of suits, although the exercise of such jurisdiction may call for the adjudication upon purely legal rights and confer purely legal relief; and so a court has jurisdiction to restrain waste and trespass to land where the facts are of such a nature that the law cannot afford adequate relief."

This court took jurisdiction admittedly to restrain the commission of such trespasses as were charged in the bill which threatened to render the property valueless for mining purposes. Such jurisdiction is sustained by all the authorities (Oölagah Coal Co. v. McCaleb et al., 68 Fed. 86, 15 C. C. A. 270; Dinnick v. Shaw, 94 Fed. 266, 36 C. C. A. 347; Erhardt v. Boaro et al., 113 U. S. 537, 5 Sup. Ct. 560, 28 L. Ed. 1113), and, incidentally having obtained jurisdiction for that purpose, the court may, and did, for the purpose of preventing a multiplicity of suits, retain it for further relief, removed a cloud upon the title, quieted the title, and determined the right of possession. Big Six Development Co. v. Mitchell, 138 Fed. 279, 70 C. C. A. 569, 1 L. R. A. (N. S.) 332. It might also as well, had it been asked to do so, have determined the damages from waste and trespass arising during the pendency of that litigation for which recovery is now sought. The right to full relief was the contention of complainant in the original suit and lies at the foundation of the present bill as supplemental thereto. It was the keynote of the opinions both of the Circuit Court and of the Circuit Court of Appeals, and is supported by abundant authority.

In his brief complainant urges the right of a court of equity to grant this relief; in fact, that the jurisdiction of this court once having been assumed for the purposes set out in the original bill is an exclusive one and that complainant is therefore barred from other jurisdictions or from an action at law for the damages. In support of the former proposition he cites the Salton Sea Cases, 172 Fed. 792, 97 C. C. A. 214. It is there held that:

"Where a court of equity has acquired jurisdiction of a suit to enjoin a continuing trespass upon land, it may also, to prevent a multiplicity of suits, award damages for the injury already done, although the same would also be recoverable by an action at law."

And damages were awarded to the extent of $456,746.23. In the opinion (pages 799 to 802, inclusive, 172 Fed., 97 C. C. A. 223), the authorities are collected and carefully considered. The following extract from High on Injunctions (4th Ed.) p. 669, is quoted and approved:

"Where, therefore, a proper case is presented for an injunction, an account of the waste already committed and a decree for damages may be had in the injunction suit. Indeed, this would seem to be but the exercise of the ordinary prerogative of equity that, when one resorts to a court of equity for one purpose, his case will be retained until the entire matter is disposed of upon the principle that the court having jurisdiction of the cause for one purpose will retain it to give general and complete relief, thereby preventing a multiplicity of suits."

But complainant while contending for this same principle as sustaining the relief prayed and accorded in the original suit, and as a foundation for that sought by his supplemental bill, nevertheless asserts that his right to an accounting for damages did not accrue until after decree in the primary action which was afterwards stayed by appeal; and that, in as much as five years had not elapsed between the affirmance of that decree and the filing of his supplemental bill, he is entitled to this supplemental relief. In support of this contention he relies upon the decision of the Supreme Court in New Orleans v. Gaines, 15 Wall. 624–633, 21 L. Ed. 215. This reliance of complainant ignores the distinction between damages in the nature of mesne profits or for use and occupation and those arising from waste and trespass. Mesne profits are such whereto the right is created by an action of ejectment brought and actually carried into judgment, not damages which accrued anterior to or at the instant of the ouster. "While the action of ejectment remained in its original state, actual damages were awarded the plaintiff. But later, when the action was adopted as a mode of trying the title to real property and the proceedings became fictitious, the parties only nominal, the practice was introduced of allowing the claimant in ejectment to recover only nominal damages. Consequent upon this it was necessary to devise some other means by which the claimant might have substantial relief, and this was effected by a new application of the common action of trespass vi et armis, generally termed an action of 'mesne profits,' in which the plaintiff complained of his ejection and loss of possession, stated the time during which the defendant held the land and took the rents and profits and prayed judgment for the damages which he thereby sustained. The reason for this division of remedies seems to have been purely a matter of convenience, for it is obvious that, when both questions were tried in the same action and the judgment was for the defendant, the time consumed upon the question of damages had been so much time wasted. Moreover, it was found that examination into the question had a tendency to distract the attention of the jury from the more important question at issue, and so it was suggested by the court and acquiesced in by the profession that the action might be divided so as to let the question of title alone be passed on in the ejectment with nominal damages 'for conformity,' and leave the amount of actual damages to be ascertained in a subsequent action." 10 Am. & Eng. Encyc. of Law, 535–537, and cases cited. This must have been the situation in New Orleans v. Gaines, 15 Wall. 633, 21 L. Ed. 215, wherein it was said:

"Until the decree in the main suit there was here an existing cause of action to recover the mesne profits. No special action could be maintained for them until the title to the property should be judicially determined.

\* \* \* Speaking strictly, there was not only no cause of action, but no right to the mesne profits until the judgment in the original suit."

By statute in many states this rule has been changed, and it is optional with the plaintiff whether he demand and recover the mesne profits in his action of ejectment or pretermit them there and recover them in a subsequent action. In others the recovery in ejectment is the exclusive remedy. This is indicated by the decision of the Supreme Court in Clay v. Field, 115 U. S. 260, 6 Sup. Ct. 36, 29 L. Ed. 375, where it is said:

"By paragraph 2512 of that Code (Miss.), mesne profits for which any defendant in ejectment is liable may be sued for and recovered, either in the action of ejectment, or by a subsequent separate action."

Of course, the original proceeding in New Orleans v. Gaines performed the offices of a suit in ejectment.

The damages here sought to be recovered arise from waste or trespass. It is unnecessary for the purposes of this action to determine which. Indeed, latterly the distinctions between waste and trespass have been largely obscured, if not obliterated. In support of his action complainant cites authorities involving both "waste" and "trespass," and uses the terms interchangeably. The Circuit Court of Appeals speaks of the acts complained of as "continuing waste or continuing trespass," and both terms are repeated throughout the opinion. Manifestly a cause of action accrued for either upon the commission of the unlawful acts. The establishment of title was not essential to the bringing of the action. The old action for waste has almost wholly fallen into disuse, and its place has been taken very generally by the action on the case in the nature of waste. The action on the case in the nature of waste is not of a possessory character, but is an action for the recovery of damages merely. A lessor may maintain the action, although he permits the tenant to retain possession after the commission of waste and accepts rent for the full term for which the premises are let. Case in the nature of waste will lie against a tenant for years after the expiration of the term or after notice to quit, and may be maintained by any one having a reversionary interest in the premises wasted against any one who does the injury whether a tenant or a stranger. To prevent the commission of threatened waste, equity gives the remedy by injunction. This remedy has obvious advantages over the common-law remedies; and hence it is that the remedy by injunction has not only superseded the old common-law actions, but has to a great extent taken the place of the action on the case for damages. The remedy may be applied although a statute provides a remedy at law, unless, of course, the legal remedy is adequate. If the remedy at law is inadequate, an injunction will be granted in all cases where a legal action would lie to recover possession of the land wasted or to recover damages.

The foregoing principles are announced in the American & Eng. Encyc. of Law in its discussion under the title of Waste, and are borne out by the authorities cited in support. See 2 Taylor's Landlord & Tenant (9th Ed.) p. 298, and following:

"In ordinary cases the account for waste already committed is incidental to the relief by injunction against future waste, and is directed upon the principle of preventing a needless multiplicity of suits."

[4] It follows that an action at law for this damage existed within the knowledge of the complainant before issue joined, and therefore it may be fairly stated that the statute of limitations with its equitable analogy began to run before issue joined in the original suit. But, aside from that, complainant, having elected to appeal to a court of equity in the first instance, could still have prayed for such relief and could have had his damages ascertained in the main action as an incident thereto. Such a theory would not have precluded the actual accounting from taking place after the rendition of the decree, and is not inconsistent with the common practice of instituting accountings under proper circumstances after final decree. But here the complainant asked specific relief. He received exactly what he asked for. Then he waited nearly five years, and now seeks to reopen this litigation for the purpose of obtaining other, further, and different relief —not prayed in the original bill, not seasonably suggested to the court by amendment or otherwise, while the action was pending in which it might have been urged. No doubt he was at that time satisfied with the royalty he had already received, electing to accept it for the use and occupancy of the mine for the limited period before the restraining order was granted. His afterthought comes too late. The case falls directly within Mosgrove et al. v. Kountze et al. (C. C.) 14 Fed. 315; Henry et al. v. Travelers' Ins. Co. (C. C.) 45 Fed. 299; City of Omaha v. Redick, 63 Fed. 1, 11 C. C. A. 1. It may well be doubted whether the bar analogous to that of legal limitations has not arisen. Kelley et al. v. Boettcher et al., 85 Fed. 55, 29 C. C. A. 14. But it is unnecessary to place the decision upon that ground. He is seeking at this late date to make a supplemental bill long after decree perform the office of a timely amendment. Statutes of limitations are statutes of repose designed to bring litigation to a seasonable end. A like purpose inheres in the doctrine of equitable laches.

The demurrer must be sustained, and the bill dismissed.